UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Cr. No. 15-10338-FDS |
| | ) |
| v. | ) VIOLATIONS: |
| | ) |
| 1. OSCAR NOE RECINOS-GARCIA, | ) 18 U.S.C. § 922(g)(5)(A) -- |
| A/K/A "PSYCHO," | ) Alien in Possession of a |
| 2. JULIO ESAU AVALOS-ALVARADO, | ) Firearm and Ammunition |
| A/K/A "VIOLENTO," | ) |
| 3. GERMAN HERNANDEZ-ESCOBAR, | ) 18 U.S.C. § 1962(d) -- |
| A/K/A "TERIBLE," | ) Conspiracy to Conduct |
| 4. NOE SALVADOR PEREZ-VASQUEZ, | ) Enterprise Affairs Through |
| A/K/A "CRAZY," | ) a Pattern of Racketeering |
| 5. SANTOS PORTILLO-ANDRADE, | ) Activity |
| A/K/A "FLACO," | ) |
| 6. HERZKON SANDOVAL, | ) 21 U.S.C. § 846 -- |
| A/K/A "CASPER," | ) Conspiracy to Distribute |
| 7. EDWIN GUZMAN, | ) Cocaine, Cocaine Base, |
| A/K/A "PLAYA," | ) Heroin, and Marijuana |
| 8. JOSE HERNANDEZ-MIGUEL, | ) |
| A/K/A "MUERTO," | ) 18 U.S.C. § 924(c)(1) -- |
| 9. EDGAR PLEITEZ, | ) Using and Carrying a |
| A/K/A "CADEJO," | ) Firearm During the Commission |
| 10. CHRISTIAN ALVARADO, | ) Of a Drug Trafficking Offense |
| A/K/A "CATRACHO," | ) |
| 11. CESAR MARTINEZ, | ) 21 U.S.C. § 841(a)(1) -- |
| A/K/A "CHECHE," | ) Distribution of Cocaine Base |
| 12. | ) |
| | ) 42 U.S.C. § 408(a)(7)(C) -- |
| 13. FNU LNU, A/K/A "CABALLO," | ) Purchase of Fraudulent |
| 14. ERICK ARGUETA LARIOS, | ) Social Security Card |
| A/K/A "LOBO," | ) |
| 15. LUIS SOLIS-VASQUEZ, | ) 18 U.S.C. § 1546(a) -- |
| A/K/A "BRUJO," | ) Possession of a Counterfeit |
| 16. JOSE MIGUEL-HERNANDEZ, | ) Resident Alien Card |
| A/K/A "SMILEY," | ) |
| A/K/A "DANGER," | ) 18 U.S.C. § 1028(a)(2) -- |
| 17. CARLOS MELARA, | ) Transfer of a False |
| A/K/A "CHUCHITO," | ) Identification Document |
| A/K/A "CRIMINAL," | ) |
| 18. JOEL MARTINEZ, | ) 8 U.S.C. § 1326 -- |
| A/K/A "ANIMAL," | ) Unlawful Re-Entry of a |
| | ) Deported Alien |

```
19. JOSE RENE ANDRADE,          )   18 U.S.C. § 1963 --
        A/K/A "TRISTE,          )   RICO Forfeiture
        A/K/A "INNOCENTE,"      )   Allegations
20. HECTOR ENAMORADO,           )
        A/K/A "VIDA LOCA,"      )   21 U.S.C. § 853 --
21. HENRY SANTOS-GOMEZ,         )   Drug Forfeiture
        A/K/A "RENEGADO,"       )   Allegations
        A/K/A "PINO,"           )
22. RAFAEL LEONER-AGUIRRE,      )   18 U.S.C. § 924(d) and
        A/K/A "TREMENDO,"       )   28 U.S.C. § 2461 (c) --
23. HECTOR RAMIRES,             )   Firearms Forfeiture
        A/K/A "CUERVO,"         )   Allegations
24. DANIEL MENJIVAR,            )
        A/K/A "ROCA,"           )   18 U.S.C. § 982(a)(2)(B)
        A/K/A "SITIKO,"         )   & (a)(6)(ii) --
25. ANGEL PINEDA,               )   Identification Fraud
        A/K/A "BRAVO,"          )   Forfeiture Allegations
        A/K/A "JOSE LOPEZ,"     )
26. JOSE VASQUEZ,               )
        A/K/A "LITTLE CRAZY,"   )
27. DAVID LOPEZ,                )
        A/K/A "CILINDRO,"       )
        A/K/A "VILLANO,"        )
28. BRYAN GALICIA-BARILLAS,     )
        A/K/A "CHUCKY,"         )
29. DOMINGO TIZOL,              )
        A/K/A "CHAPIN,"         )
30. FNU LNU, A/K/A "VIOLENTO,"  )
31. OSCAR DURAN,                )
        A/K/A "DEMENTE,"        )
32. EDWIN GONZALEZ,             )
        A/K/A "SANGRIENTO,"     )
33. HENRY JOSUE PARADA MARTINEZ, )
        A/K/A "STREET DANGER,"  )
34. JOSUE MORALES,              )
        A/K/A "GALLITO,"        )
35. KEVIN AYALA,                )
        A/K/A "BLANCITO,"       )
36. MARIO AGUILAR RAMOS,        )
37. RUTILIO PORTILLO,           )
        A/K/A "PANTERA,"        )
38. EDWIN DIAZ, A/K/A "DEMENTE," )
39. MARVIN MELGAR,              )
        A/K/A "NINJA,"          )
40. JAIRO PEREZ, A/K/A "SECO,"  )
```

2

```
41. RAMIRO GUERRA,                    )
        A/K/A "CAMELLO,"              )
42. MANUEL MARTINEZ,                  )
        A/K/A "GORDO,"                )
43. ALEXANDER ALVARENGA,              )
44. MANUEL FLORES-VALLE,              )
        A/K/A "MANNY,"                )
45. HEINER YOVANI GOMEZ,              )
        A/K/A "FIERO,"                )
46. FNU LNU, A/K/A                    )
        "THE COLUMBIAN,"              )
47. CARLOS LOVATO,                    )
48. FNU LNU, A/K/A "MIGUE,"           )
49. LUIS LNU,                         )
50. JOSE NELSIN REYES-VELASQUEZ,      )
        A/K/A "DIABLITO,"             )
51. OSCAR RIVERA,                     )
        A/K/A "JOSE,"                 )
52. ROBERTO A. LOPEZ,                 )
53. FRANKLIN RODRIGUEZ,               )
        A/K/A "HOLLYWOOD,"            )
54. OSCAR RAMIREZ-CORNEJO,            )
        A/K/A "VAGO,"                 )
55. MAURICIO SANCHEZ,                 )
        A/K/A "TIGRE,"                )
56. JOSE ADAN MARTINEZ CASTRO,        )
        A/K/A "CHUCKY," AND           )
57. ELENILSON GUSTAVO                 )
        GONZALEZ-GONZALEZ, A/K/A      )
        "SINIESTRO,"                  )
            Defendants.               )
```

## SECOND SUPERSEDING INDICTMENT

COUNT ONE:        (18 U.S.C. § 922(g)(5)(A)--Alien in Possession
                  of a Firearm and Ammunition)

The Grand Jury charges that:

1.    On or about July 8, 2015, at Somerville, in the
District of Massachusetts,

        1.    OSCAR NOE RECINES-GARCIA, A/K/A "PSYCHO," and
        2.    JULIO ESAU AVALOS-ALVARADO, A/K/A "VIOLENTO,"

the defendants herein, aliens who were then illegally and

unlawfully in the United States, did knowingly possess in and

affecting commerce a firearm and ammunition, to wit: a .22

caliber Sterling model semi-automatic pistol bearing serial

number A14546 and twelve rounds of .22 caliber ammunition.

        All in violation of Title 18, United States Code, Section

922(g)(5)(A).

4

COUNT TWO:        (18 U.S.C. § 1962(d)--Conspiracy to Conduct
                  Enterprise Affairs through a Pattern of
                  Racketeering Activity)

The Grand Jury further charges that:

### Introduction

At all times relevant to this Second Superseding
Indictment:

2.    La Mara Salvatrucha, also known as the MS-13 criminal
organization (hereinafter "MS-13"), is composed primarily of
immigrants or descendants of immigrants from El Salvador, with
members operating throughout Massachusetts, including East
Boston, Everett, Chelsea, Somerville, Lynn, and Revere, and
elsewhere.

3.    The name "Mara Salvatrucha" is a combination of
several slang terms.  In its most common usage, the word "Mara"
is the term used in El Salvador for "gang"; the phrase
"Salvatrucha" is a combination of the words "Salva," which is an
abbreviation for "Salvadoran," and "trucha," which is a slang
term for "fear us," "look out," or "heads up."

4.    In the United States, MS-13 originated in Los Angeles,
California, where MS-13 members engaged in turf wars for the
control of drug distribution locations.  MS-13 quickly spread to
states across the country, including Massachusetts and
elsewhere.  MS-13 has been operating in the United States since
at least the 1980s.

5.   In 2012, MS-13 became the first, and remains the only, street gang to be designated by the United States government as a "transnational criminal organization."   Today, MS-13 is one of the largest criminal organizations in the United States, and is a national and international criminal organization with over 6,000 members in the United States with a presence in at least forty-six states and the District of Columbia, as well as over 30,000 members internationally, mostly in Mexico, Honduras, Guatemala, and El Salvador.   MS-13 members actively recruit members -- often juveniles inside high schools -- from communities such as Chelsea and East Boston, MA, which have a large number of immigrants from El Salvador.   Members, however, can also have ethnic heritage from other Central and Latin American countries.

6.   MS-13 was organized in Massachusetts and elsewhere in the form of so-called "cliques" -- that is, smaller groups acting under the larger mantle of MS-13 and operating in a specific region, city, or part of a city.   In order to organize and coordinate hundreds of cliques made up of tens of thousands of MS-13 members located in numerous disparate locations, MS-13 leadership in El Salvador organized the criminal organization into "programs."   MS-13 generally organized its programs either by name -- for example, major cliques, such as the Hollywood clique -- or by geography, such as the L.A. Program and the East

6

Coast Program. Grouping the various cliques into these programs created a hierarchy that expedited the process of getting orders from leadership in El Salvador to the street and remitting money from the street back to leadership in El Salvador. MS-13 cliques worked both independently and cooperatively to engage in criminal activity and assist one another in avoiding detection by law enforcement. The cliques operated under the umbrella rules of MS-13 leadership in El Salvador.

7. All of the cliques under the various MS-13 programs, including those in Massachusetts, most of which fall under the East Coast Program, held meetings to collect dues from individual MS-13 members. The dues from each clique were then generally provided to the program leader (e.g., the East Coast Program leader), who transferred the money, usually via wire transfer, to the incarcerated MS-13 leaders in El Salvador, known as "La Ranfla." La Ranfla used the U.S.-provided money to pay for cell phones, shoes, food, and legal services for incarcerated MS-13 members, as well as to procure weapons and other supplies to facilitate criminal activity. Some of these items were used in El Salvador, but others, especially cell phones, enabled La Ranfla to have a direct impact on the United States. La Ranfla used the money to obtain contraband cell phones, which they used to call U.S. MS-13 leaders and order them to generate more money or to "green light" (i.e., order the

7

killing of) members or associates believed to be cooperating with law enforcement. If a clique did not fall under a particular program, such as the Eastside Loco Salvatrucha ("ESLS") in Massachusetts, which has been resisting joining the East Coast Program, that clique nevertheless fell under the umbrella of MS-13 and held meetings in which dues were collected and transferred to MS-13 members in El Salvador.

8.      In Massachusetts, some of these cliques are identified by names such as East Boston Loco Salvatrucha ("EBLS"); Eastside Loco Salvatrucha ("ESLS"); Everett Loco Salvatrucha ("ELS"); Enfermos Criminales Salvatrucha ("ECS"); Trece Loco Salvatrucha ("TLS"); Hollywood Loco Salvatrucha ("HLS"); Chelsea Loco Salvatrucha ("CLS"); Syko Loco Salvatrucha ("SLS"); and Molinos Loco Salvatrucha ("MLS").

9.      The leaders of MS-13 cliques in Massachusetts and elsewhere were frequently called the "palabras" -- i.e., the "words" or "voices" -- or the "runners." The leader of a clique was often referred to as the "first word," "first voice," or "runner," and the second in command was called the "second word" or "second voice."

10.     MS-13 members from different cliques attended meetings together. In Massachusetts and elsewhere, the MS-13 cliques met to discuss, plan, and report on, among other things, organizational issues; membership issues; illegal activity on

8

behalf of MS-13; acts of violence committed by MS-13 members against rival gang members and others with the goal of achieving control of territory; law enforcement activity against MS-13 members; and those suspected of cooperating with law enforcement. Members of the cliques were required to make regular "dues" payments at these clique meetings, which money the clique used for a variety of purposes, including, but not limited to, to send to El Salvador for MS-13 clique members who were deported and/or imprisoned in El Salvador, to purchase "clique firearms" (i.e., firearms held by a clique member to be used on request by any clique member), and to send to clique members imprisoned in the United States.

11. In order to join MS-13, members generally were required to complete an initiation process. That process started with a prospective member being allowed to "hang around" with members of MS-13 and be observed by the criminal organization, sometimes for a period of months or years. Such prospective members were referred to as "paros." During this investigation, paros were often recruited in the local high schools, including Chelsea High School, Everett High School, and East Boston High School, often when they were 14 or 15 years old. Paros were observed for trustworthiness and required to do whatever a "homeboy" (full member of MS-13) or "chequeo" (see below) requested. Usually a paro was sponsored by a homeboy who

9

would serve as that individual's mentor/sponsor throughout the initiation process. If a prospective member passed the paro stage, he became a "chequeo." During this stage, the prospective member was allowed closer access to members of MS-13 and was again observed for trustworthiness and required to do whatever a homeboy asked.

12.  To pass from chequeo stage to homeboy status, prospective members usually had to engage in some significant criminal activity on behalf of MS-13, usually at least one murder of a rival gang member and a demonstration of loyalty by coming to the aid of or supporting an MS-13 member.  The members of the particular MS-13 clique had to vote to approve elevation to homeboy status.  The clique would then hold a meeting during which the prospective member would be "jumped in" or "beat in" to MS-13 -- that is, members of the MS-13 clique would beat the new member with their hands and feet, usually until one of the leaders of the clique finished counting aloud slowly to thirteen.

13.  When used in this Second Superseding Indictment, the term MS-13 "associate" refers to prospective members, including so-called paros and chequeos, as well as individuals who associated with MS-13 members through engagement in criminal activity, such as drug trafficking.

14. Some members of MS-13 who achieved homeboy status or rank signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," or "MS 13," or similar slogans, often written in gothic lettering. In addition, MS-13 members often have tattoos that signify membership in a particular clique. MS-13 colors are generally blue and white, sometimes with the number "13"; MS-13 members and associates are not permitted to wear the color red, the color of MS-13's chief rival, the 18th Street gang. MS-13 members often wear Nike Cortez sneakers, in white or blue, to signify their MS-13 membership. Chequeos and paros are not permitted to get MS-13 or clique tattoos; only homeboys are permitted to get such tattoos. Chequeos are considered to represent MS-13, however, and can wear the MS-13 colors and the MS-13 sneakers, and are not permitted to wear red.

15. MS-13 members on occasion marked their territory or signified their presence through the use of graffiti with the words "MS," a clique's initials, or other identifying slogan. Some MS-13 members were more discreet and less public about their membership, by hiding and avoiding such clothing and tattoos in order to avoid detection by law enforcement. During the course of this investigation, the leadership of the various cliques in Massachusetts at times instructed their members and chequeos to avoid law enforcement attention by dressing

11

discreetly and carrying certain weapons. For example, after two Boston area cliques (the Everett Loco Salvatrucha ("ELS") and the Molinos Loco Salvatrucha ("MLS")) were involved in two murders in East Boston in September 2015, NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY," an MS-13 leader for ELS, instructed his members to dress discreetly; not display the MS-13 colors, Nike Cortez sneakers, and tattoos; and carry a bicycle chain with a lock for a weapon, rather than a gun or knife, because there was a heightened chance that they would be stopped by police on the street.

16. MS-13 members refer to one another by their MS-13 names and often do not know fellow MS-13 members except by these MS-13 names. When a "chequeo" becomes a "homeboy," the MS-13 clique generally gives him a new MS-13 name to replace any prior nickname. Where two aliases are used herein, it is usually because the individual in question was elevated from chequeo status to homeboy status during the course of the investigation.

17. Members of MS-13 were expected to protect the name, reputation, and status of MS-13 and its members from rival gang members or any other person. MS-13 members generally believe that all individuals should show respect and deference to the MS-13 criminal organization and its members. To protect the MS-13 criminal organization and to enhance its reputation, MS-13 members are expected to use any means necessary to get respect

12

from those who show disrespect, including acts of intimidation and violence, up to and including murder.

18.   Members of MS-13 engaged in criminal activity including, but not limited to, murder, attempted murder, drug trafficking, illegal possession of firearms, robbery, and obstructing justice in the form of threatening and intimidating witnesses whom they believed were cooperating with law enforcement.   MS-13 members were often required to commit acts of violence to maintain membership and discipline within the MS-13 criminal organization, including violence against rival gangs.   Participation in criminal activity by an MS-13 member, particularly violent acts directed at rival gangs or as directed by the MS-13 leadership, increased the level of respect accorded that member, resulting in that member maintaining or increasing his position in the MS-13 criminal organization, and possibly resulting in a promotion to a leadership position.

19.   MS-13 has a set of rules that govern the conduct of its members and associates.   These rules include attacking rival gang members on sight, particularly members of the 18th Street gang, and supporting fellow "homeboys" in any dispute.   Leaders act to resolve disputes, address organizational issues, and participate in MS-13 decisions such as whether to assault or murder, known as "green light," those suspected of cooperating with law enforcement.

13

20. Violence is a central tenet of MS-13, as evidenced by its motto -- "mata, viola, controla," translated as kill, rape, control. This violence is directed against rival gangs, particularly the 18th Street gang, and anyone who is perceived to have disrespected MS-13. MS-13 members and associates often commit murders and attempted murders using machetes, knives, and chains in order to intimidate rival gang members.

21. MS-13 members communicated about their MS-13 activities with other MS-13 members in Massachusetts and elsewhere in the United States, and in El Salvador, using mobile telephones and other modes of communication. Additionally, MS-13 members used transnational and international money wire transfers to conduct and promote the activities of the MS-13 criminal organization.

## The Racketeering Conspiracy

22. At all times relevant to this Second Superseding Indictment, the following defendants were leaders, members, and associates of MS-13:

      1. **OSCAR NOE RECINOS-GARCIA, A/K/A "PSYCHO,"**
      2. **JULIO ESAU AVALOS-ALVARADO, A/K/A "VIOLENTO,"**
      3. **GERMAN HERNANDEZ-ESCOBAR, A/K/A "TERIBLE,"**
      4. **NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"**
      5. **SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"**
      6. **HERZZON SANDOVAL, A/K/A "CASPER,"**
      7. **EDWIN GUZMAN, A/K/A "PLAYA,"**
      8. **JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO,"**
      9. **EDGAR PLEITEZ, A/K/A "CADEJO,"**
    10. **CHRISTIAN ALVARADO, A/K/A "CATRACHO,"**
    11. **CESAR MARTINEZ, A/K/A "CHECHE,"**

```
12.
13.  FNU LNU, A/K/A "CABALLO,"
14.  ERICK ARGUETA LARIOS, A/K/A "LOBO,"
15.  LUIS SOLIS-VASQUEZ, A/K/A "BRUJO,"
16.  JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY,"
     A/K/A "DANGER,"
17.  CARLOS MELARA, A/K/A "CHUCHITO,"
     A/K/A "CRIMINAL,"
18   JOEL MARTINEZ, A/K/A "ANIMAL,"
19.  JOSE RENE ANDRADE, A/K/A "TRISTE,"
     A/K/A "INNOCENTE,"
20.  HECTOR ENAMORADO, A/K/A "VIDA LOCA,"
21.  HENRY SANTOS-GOMEZ, A/K/A "RENEGADO,"
     A/K/A "PINO,"
22.  RAFAEL LEONER-AGUIRRE, A/K/A "TREMENDO,"
23.  HECTOR RAMIRES, A/K/A "CUERVO,"
24.  DANIEL MENJIVAR, A/K/A "ROCA," A/K/A "SITIKO,"
25.  ANGEL PINEDA, A/K/A "BRAVO," A/K/A "JOSE LOPEZ,"
26.  JOSE VASQUEZ, A/K/A "LITTLE CRAZY,"
27.  DAVID LOPEZ, A/K/A "CILINDRO", A/K/A "VILLANO,"
28.  BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY,"
29.  DOMINGO TIZOL, A/K/A "CHAPIN,"
30.  FNU LNU, A/K/A "VIOLENTO,"
31.  OSCAR DURAN, A/K/A "DEMENTE,"
32.  EDWIN GONZALEZ, A/K/A "SANGRIENTO,"
33.  HENRY JOSUE PARADA MARTINEZ,
     A/K/A "STREET DANGER,"
34.  JOSUE MORALES, A/K/A "GALLITO,"
35.  KEVIN AYALA, A/K/A "BLANCITO,"
36.  MARIO AGUILAR RAMOS,
37.  RUTILIO PORTILLO, A/K/A "PANTERA,"
38.  EDWIN DIAZ, A/K/A "DEMENTE,"
39.  MARVIN MELGAR, A/K/A "NINJA,"
40.  JAIRO PEREZ, A/K/A "SECO,"
55.  MAURICIO SANCHEZ, A/K/A "TIGRE," and
56.  JOSE ADAN MARTINEZ CASTRO, A/K/A "CHUCKY."
```

## The Enterprise

23.  MS-13, including its leadership, members and
associates, in the District of Massachusetts, numerous other
states, El Salvador, and elsewhere, constituted an "enterprise"
as defined in Title 18, United States Code, Section 1961(4),

that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the goals of the enterprise.

### Purposes of the Enterprise

24.  The purposes of the MS-13 enterprise included the following:

a.  Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

b.  Promoting and enhancing the enterprise and its members' and associates' activities, including, but not limited to, drug trafficking, robberies, firearms possession, and other criminal activities;

c.  Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d.  Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador; and

e.  Providing assistance to other MS-13 members who committed crimes for and on behalf of the MS-13 criminal

16

organization, to hinder, obstruct, and prevent law enforcement
officers from identifying, apprehending, and successfully
prosecuting and punishing the offenders.

## The Racketeering Conspiracy

25. From a time unknown to the Grand Jury and continuing
until in or about January 2016, at East Boston, Chelsea,
Somerville, Revere, Cambridge, and Everett, and elsewhere in the
District of Massachusetts, in Richmond, in the Eastern District
of Virginia, in Salem, and elsewhere in the District of New
Hampshire, in the District of Arizona, in the District of New
Jersey, and at other places presently known and unknown,

```
1.    OSCAR NOE RECINOS-GARCIA, A/K/A "PSYCHO,"
2.    JULIO ESAU AVALOS-ALVARADO, A/K/A "VIOLENTO,"
3.    GERMAN HERNANDEZ-ESCOBAR, A/K/A "TERIBLE,"
4.    NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"
5.    SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"
6.    HERZZON SANDOVAL, A/K/A "CASPER,"
7.    EDWIN GUZMAN, A/K/A "PLAYA,"
8.    JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO,"
9.    EDGAR PLEITEZ, A/K/A "CADEJO,"
10.   CHRISTIAN ALVARADO, A/K/A "CATRACHO,"
11.   CESAR MARTINEZ, A/K/A "CHECHE,"
12.
13.   FNU LNU, A/K/A "CABALLO,"
14.   ERICK ARGUETA LARIOS, A/K/A "LOBO,"
15.   LUIS SOLIS-VASQUEZ, A/K/A "BRUJO,"
16.   JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY,"
      A/K/A "DANGER,"
17.   CARLOS MELARA, A/K/A "CHUCHITO,"
      A/K/A "CRIMINAL,"
18    JOEL MARTINEZ, A/K/A "ANIMAL,"
19.   JOSE RENE ANDRADE, A/K/A "TRISTE,"
      A/K/A "INNOCENTE,"
20.   HECTOR ENAMORADO, A/K/A "VIDA LOCA,"
21.   HENRY SANTOS-GOMEZ, A/K/A "RENEGADO,"
      A/K/A "PINO,"
```

17

22. RAFAEL LEONER-AGUIRRE, A/K/A "TREMENDO,"
23. HECTOR RAMIRES, A/K/A "CUERVO,"
24. DANIEL MENJIVAR, A/K/A "ROCA," A/K/A "SITIKO,"
25. ANGEL PINEDA, A/K/A "BRAVO," A/K/A "JOSE LOPEZ,"
26. JOSE VASQUEZ, A/K/A "LITTLE CRAZY,"
27. DAVID LOPEZ, A/K/A "CILINDRO," A/K/A "VILLANO,"
28. BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY,"
29. DOMINGO TIZOL, A/K/A "CHAPIN,"
30. FNU LNU, A/K/A "VIOLENTO,"
31. OSCAR DURAN, A/K/A "DEMENTE,"
32. EDWIN GONZALEZ, A/K/A "SANGRIENTO,"
33. HENRY JOSUE PARADA MARTINEZ,
    A/K/A "STREET DANGER,"
34. JOSUE MORALES, A/K/A "GALLITO,"
35. KEVIN AYALA, A/K/A "BLANCITO,"
36. MARIO AGUILAR RAMOS,
37. RUTILIO PORTILLO, A/K/A "PANTERA,"
38. EDWIN DIAZ, A/K/A "DEMENTE,"
39. MARVIN MELGAR, A/K/A "NINJA,"
40. JAIRO PEREZ, A/K/A "SECO,"
55. MAURICIO SANCHEZ, A/K/A "TIGRE," and
56. JOSE ADAN MARTINEZ CASTRO, A/K/A "CHUCKY,"

the defendants herein, and others known and unknown to the Grand

Jury, being persons employed by and associated with MS-13, an

enterprise which was engaged in, and the activities of which

affected, interstate and foreign commerce, did knowingly

conspire with each other, and with other persons known and

unknown to the Grand Jury, to violate Title 18, United States

Code, Section 1962(c), that is, to conduct and participate,

directly and indirectly, in the conduct of the affairs of the

MS-13 enterprise through a pattern of racketeering activity, as

that term is defined in Title 18, United States Code, Sections

1961(1) and (5).

26.   The aforementioned pattern of racketeering activity consisted of:

> a.   multiple offenses involving trafficking in narcotics, including cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1);
>
> b.   multiple acts involving murder, in violation of Massachusetts General Laws, Chapter 265, Section 1(murder), Section 15 (assault with intent to murder), Section 16 (attempt to murder), and Section 18 (armed assault with intent to rob or murder), and in violation of Massachusetts General Laws, Chapter 274, Section 7 (conspiracy to commit murder); and
>
> c.   multiple acts involving robbery, in violation of Massachusetts General Laws, Chapter 265, Section 17 (armed robbery), and in violation of Massachusetts General Laws, Chapter 274, Section 6 (attempted robbery) and Section 7 (conspiracy to rob).

27.   It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the MS-13 enterprise.

### Means and Methods

28.   Among the means and methods by which the defendants and their co-conspirators conspired to conduct and participate in the conduct of the affairs of the MS-13 enterprise were the following:

> a.   Leaders, members, and associates of MS-13 used the MS-13 criminal enterprise to commit, attempt and threaten to

19

commit, acts of violence, including murder and attempted murder, to protect and expand MS-13's criminal operations, including intimidating potential witnesses to MS-13's illegal activities.

b.    Leaders, members, and associates of MS-13 used the MS-13 criminal enterprise to promote a climate of fear through violence and threats of violence in order to intimidate potential rivals to MS-13 and its illegal activities, and to intimidate potential witnesses to MS-13's illegal activities.

c.    Leaders, members, and associates of MS-13 promulgated certain rules to be followed by all participants in the MS-13 criminal enterprise including the rule that a participant in the enterprise not act as an informant for law enforcement authorities regarding the criminal activities of the MS-13 enterprise, and the rule that MS-13 members and associates attempt to kill members of rival gangs, including the 18th Street gang, whenever possible.

d.    To enforce the rules of the MS-13 criminal enterprise, and to promote discipline, leaders, members, and associates of MS-13 murdered, attempted to murder, assaulted and threatened those participants in the MS-13 enterprise and others who violated the rules or posed a threat to MS-13.

e.    Leaders, members, and associates of MS-13 were advised of the rules of MS-13, and MS-13 members voted on the initiation of new members into MS-13.

20

f.     Leaders, members, and associates of MS-13 were required to send a certain amount of money each month to the leadership of the MS-13 enterprise in El Salvador, which money was used for, among other things, buying guns, drugs, and cellular telephones to facilitate the MS-13 criminal enterprise, and supporting incarcerated MS-13 members.

g.     To generate income for MS-13, participants in the MS-13 criminal enterprise were required to conduct, and, in fact, conducted illegal activities under the protection of the MS-13 enterprise.

h.     To perpetuate the MS-13 criminal enterprise, participants in the enterprise attempted to conceal from law enforcement the existence of MS-13, the identity of its participants, the ways in which it conducted its affairs, and the locations at which it discussed and conducted its affairs.

i.     Leaders, members, and associates of the MS-13 criminal enterprise possessed, carried, and used firearms, as well as other weapons, to protect their operations from theft, robbery, and competition from others.  These weapons were possessed, carried, and used for various reasons, including but not limited to:  protecting MS-13's narcotics and the proceeds of drug distribution; ensuring that drug distribution activities were controlled by MS-13 and its leaders, members, and associates; intimidating others from attempting to steal MS-13's

21

narcotics and proceeds from drug distribution; robbing others; killing and attempting to kill rival gang members; and ensuring the personal safety of leaders, members, and associates of MS-13.

29. The means and methods of the conspiracy included numerous acts of murder and attempted murder, including the following acts:

**MURDERS**

a.   The murder of Katerin Gomez.

(i)   On or about October 18, 2014, in Chelsea, MA, HECTOR RAMIRES, A/K/A "CUERVO"; and BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY," acting deliberately with premeditated malice aforethought, and with extreme atrocity and cruelty, murdered Katerin Gomez, in violation of M.G.L. Ch. 265 § 1.

(ii) On or about October 18, 2014, in Chelsea, MA, HECTOR RAMIRES, A/K/A "CUERVO"; and BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY," unlawfully killed Katerin Gomez with malice aforethought in Chelsea, MA, in violation of M.G.L. Ch. 265 § 1.

b.   The murder of Javier Ortiz.

(i)   On or about December 14, 2014, in Chelsea, MA, HECTOR ENAMORADO, A/K/A "VIDA LOCA"; LUIS SOLIS-VASQUEZ, A/K/A "BRUJO"; NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY"; and JOSE MIGUEL HERNANDEZ, A/K/A "DANGER," acting deliberately with premeditated malice aforethought, and with extreme atrocity and

22

cruelty. murdered Javier Ortiz, in violation of M.G.L. Ch. 265 § 1.

(ii)   On or about December 14, 2014, in Chelsea, MA, HECTOR ENAMORADO, A/K/A "VIDA LOCA"; and LUIS SOLIS-VASQUEZ, A/K/A "BRUJO"; NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY"; and JOSE MIGUEL HERNANDEZ, A/K/A "DANGER," unlawfully killed Javier Ortiz with malice aforethought, in violation of M.G.L. Ch. 265 § 1.

(iii)   Following the murder of Javier Ortiz, HERZZON SANDOVAL, A/K/A "CASPER," and EDWIN GUZMAN, A/K/A "PLAYA," leaders of the ESLS clique of MS-13, convened a clique meeting to congratulate ENAMORADO and SOLIS-VASQUEZ on the murder.  At this ESLS clique meeting, to maintain discipline within MS-13, SANDOVAL and GUZMAN also ordered the 13-second beating of another MS-13 member who did not come to ENAMORADO's aid the night before the murder of Javier Ortiz, when ENAMORADO had an altercation with Ortiz.

c.   The murder of Wilson Martinez.

(i)   On or about September 7, 2015, in East Boston, MA, CARLOS MELARA, A/K/A "CHUCHITO," A/K/A "CRIMINAL"; HENRY JOSUE PARADA MARTINEZ, A/K/A "STREET DANGER"; EDWIN GONZALEZ, A/K/A "SANGRIENTO"; and a juvenile known to the Grand Jury, acting deliberately with premeditated malice aforethought,

and with extreme atrocity and cruelty, murdered Wilson Martinez, in violation of M.G.L. Ch. 265 § 1.

(ii) On or about September 7, 2015, in East Boston, MA, CARLOS MELARA, A/K/A "CHUCHITO," A/K/A "CRIMINAL"; HENRY JOSUE PARADA MARTINEZ, A/K/A "STREET DANGER"; EDWIN GONZALEZ, A/K/A "SANGRIENTO"; and a juvenile known to the Grand Jury, unlawfully killed Wilson Martinez with malice aforethought, in violation of M.G.L. Ch. 265 § 1.

(iii) Prior to the murder of Wilson Martinez, NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY," the leader of ELS, and OSCAR DURAN, A/K/A "DEMENTE," the leader of MLS, encouraged the above defendants to murder rival gang members and associates to prove themselves worthy of promotion in the MS-13 criminal organization.

After the Martinez murder, the ELS clique promoted CARLOS MELARA, A/K/A "CHUCHITO," A/K/A "CRIMINAL," and a juvenile known to the Grand Jury, from chequeo to homeboy status (i.e., they were beat into the MS-13 criminal organization), and the MLS clique promoted HENRY JOSUE PARADA MARTINEZ, A/K/A "STREET DANGER," from paro to chequeo, all because of their involvement in the murder. Similarly, because of his involvement in the Martinez murder, on December 6, 2015, at Deer Island in Winthrop, the MLS clique promoted EDWIN GONZALEZ, A/K/A "SANGRIENTO," from chequeo to homeboy in a 13-second "beat in."

24

Because the Molinos clique did not have enough members in Massachusetts to "jump in" GONZALEZ, members from the ELS, EBLS, and the MLS cliques attended the meeting, including SANTOS PORTILLO-ANDRADE, A/K/A "FLACO," the leader of EBLS; NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY," the leader of ELS; OSCAR DURAN, A/K/A "DEMENTE," the leader of MLS; HENRY JOSUE PARADA MARTINEZ, A/K/A "STREET DANGER," a member of ELS; and CARLOS MELARA, A/K/A "CHUCHITO," A/K/A "CRIMINAL," a member of ELS, as well as other members of MS-13 known to the Grand Jury.

d.   The murder of Irvin De Paz.

(i)   On or about September 20, 2015, in East Boston, MA, JOEL MARTINEZ, A/K/A "ANIMAL"; and other members of MS-13 known to the Grand Jury, acting deliberately with premeditated malice aforethought, and with extreme atrocity and cruelty, murdered Irvin De Paz, in violation of M.G.L. Ch. 265 § 1.

(ii)   On or about September 20, 2015, in East Boston, MA, JOEL MARTINEZ, A/K/A "ANIMAL"; and other members of MS-13 known to the Grand Jury, unlawfully killed Irvin De Paz with malice aforethought, in violation of M.G.L. Ch. 265 § 1.

(iii)   Prior to the murder of Irvin De Paz, NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY," the leader of the ELS clique of MS-13, encouraged the above defendant and others to

25

murder rival gang members and associates to prove themselves
worthy of promotion in the MS-13 criminal organization.  After
De Paz's murder, the ELS clique disciplined JOEL MARTINEZ, A/K/A
"ANIMAL" (i.e., he was beaten for 13 seconds at a clique
meeting), for outstanding violations, and did not make him a
homeboy.  On January 8, 2016, the ESLS clique of MS-13 held a
clique meeting at an auto repair shop in Everett, MA, during
which ESLS promoted JOEL MARTINEZ, A/K/A "ANIMAL," to homeboy
status for the murder of Irvin De Paz.  HERZZON SANDOVAL, A/K/A
"CASPER," and EDWIN GUZMAN, A/K/A "PLAYA," the leaders of ESLS,
presided over the meeting.  After the MS-13 members beat JOEL
MARTINEZ for 13 seconds, EDWIN GUZMAN, A/K/A "PLAYA," said,
"[W]elcome to the Mara."

> e.    The murder of Christofer Perez-De la Cruz.

(i)   On or about January 10, 2016, in East
Boston, MA, EDWIN GONZALEZ, A/K/A "SANGRIENTO"; EDWIN DIAZ,
A/K/A "DEMENTE"; MARVIN MELGAR, A/K/A "NINJA"; and JAIRO PEREZ,
A/K/A "SECO," acting deliberately with premeditated malice
aforethought, and with extreme atrocity and cruelty, murdered
Christofer Perez-De la Cruz, in violation of M.G.L. Ch. 265 § 1.

(ii) On or about January 10, 2016, in East
Boston, MA, EDWIN GONZALEZ, A/K/A "SANGRIENTO"; EDWIN DIAZ,
A/K/A "DEMENTE"; MARVIN MELGAR, A/K/A "NINJA"; and JAIRO PEREZ,

26

A/K/A "SECO," unlawfully killed Christofer Perez-De la Cruz with malice aforethought, in violation of M.G.L. Ch. 265 § 1.

(iii)   In December 2015, in Richmond, Virginia, JOSE ADAN MARTINEZ CASTRO, A/K/A "CHUCKY," the leader of MS-13's East Coast Program in the United States, presided over a meeting of East Coast Program clique leaders throughout the United States, including OSCAR DURAN, A/K/A "DEMENTE," the leader of the MLS clique in Massachusetts. During this meeting, MARTINEZ CASTRO told the leaders that their cliques needed to be more active in killing rival gang members.

On January 15, 2016, JOSE VASQUEZ, A/K/A "LITTLE CRAZY," the leader of the TLS clique of MS-13, and JAIRO PEREZ, A/K/A "SECO," attempted to hide evidence related to the murder of Christofer Perez-De la Cruz, including knives and a machete used in the murder, as well as bloody clothes worn by the participants during the murder, by burying the evidence at a location in Massachusetts.

### ATTEMPTED MURDERS

f.   On or about March 28, 2014, in Chelsea, Massachusetts, HECTOR RAMIRES, A/K/A "CUERVO", attempted to murder Victim No. 5, an individual known to the Grand Jury, by stabbing him with a knife.

g.   On or about April 6, 2014, in Chelsea, Massachusetts, RAFAEL LEONER-AGUIRRE, A/K/A "TREMENDO",

attempted to murder Victim No. 6 and Victim No. 7, individuals known to the Grand Jury, by attacking them with a machete, and striking Victim No. 6.

h.    On or about April 16, 2014, in Chelsea, Massachusetts, RAFAEL LEONER-AGUIRRE, A/K/A "TREMENDO"; JOSUE MORALES, A/K/A "GALLITO"; and KEVIN AYALA, A/K/A "BLANCITO," agreed to, and attempted to, murder Victim No. 9 and Victim No. 10, individuals known to the Grand Jury, by shooting at Victim 9 and Victim 10 with a gun and striking Victim 9.

i.    On or about May 29, 2014, in Chelsea, Massachusetts, DANIEL MENJIVAR, A/K/A "ROCA," A/K/A "SITIKO"; and DAVID LOPEZ, A/K/A "CILINDRO," A/K/A "VILLANO," agreed to, and attempted to, murder Victim No. 11, an individual known to the Grand Jury, by stabbing Victim 11 with a knife and shooting Victim 11 with a gun.

j.    On or about September 8, 2014, in Chelsea, Massachusetts, ANGEL PINEDA, A/K/A "BRAVO," A/K/A "JOSE LOPEZ"; JOSE VASQUEZ, A/K/A "LITTLE CRAZY"; and BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY," agreed to, and attempted to, murder Victim No. 12, an individual known to the Grand Jury, by stabbing him with a knife.

k.    On or about December 4, 2014, in Somerville, Massachusetts, JOSE RENE ANDRADE, A/K/A "TRISTE," A/K/A "INNOCENTE"; and MARIO AGUILAR RAMOS, agreed to, and attempted

to, murder Victim No. 13, Victim No. 14 and Victim No. 15,

individuals known to the Grand Jury, by attacking Victim No. 13,

Victim No. 14, and Victim No. 15 with a knife and stabbing

Victim No. 13.

l.    On or about January 13, 2015, in Lynn,

Massachusetts, HENRY SANTOS-GOMEZ, A/K/A "RENEGADO," A/K/A

"PINO," attempted to murder Victim No. 16, an individual known

to the Grand Jury, by shooting Victim No. 16 with a gun.

m.    From a time unknown to the Grand Jury, but at

least by in or about March 2015, and continuing thereafter until

at least April 2015, in Chelsea, and in the District of New

Jersey, and elsewhere, DANIEL MENJIVAR, A/K/A "ROCA," A/K/A

"SITIKO"; DAVID LOPEZ, A/K/A "CILINDRO," A/K/A "VILLANO"; BRYAN

GALICIA-BARILLAS, A/K/A "CHUCKY"; RAFAEL LEONER-AGUIRRE, A/K/A

"TREMENDO"; and FNU LNU, A/K/A "VIOLENTO," agreed to, and

attempted to, murder Victim No. 22, an individual known to the

Grand Jury, with a machete.

Prior to the attempted murder of Victim No. 22, RAFAEL

LEONER-AGUIRRE, A/K/A "TREMENDO," the leader of the Enfermos in

Chelsea, Massachusetts, told MS-13 leadership that Victim No. 22

was cooperating with law enforcement, and FNU LNU, "VIOLENTO," a

leader of the Enfermos in Arizona, gave the order to kill Victim

No. 22.

n.    On or about May 12, 2015, in Chelsea,
Massachusetts, JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO"; and LUIS
SOLIS-VASQUEZ, A/K/A "BRUJO," agreed to, and attempted to,
murder Victim No. 17, an individual known to the Grand Jury, by
stabbing him with a knife.

o.    On or about May 26, 2015, in Chelsea,
Massachusetts, BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY"; and
DOMINGO TIZOL, A/K/A "CHAPIN," agreed to, and attempted to,
murder Victim No. 18 and Victim No. 19, individuals known to the
Grand Jury, by attacking Victim No. 18 and Victim No. 19 with a
knife and stabbing Victim No. 19.

p.    On or about August 23, 2015, in Chelsea,
Massachusetts, EDWIN GONZALEZ, A/K/A "SANGRIENTO," attempted to
murder Victim No. 20 and Victim No. 21, individuals known to the
Grand Jury, by attacking Victim No. 20 and Victim No. 21 with a
machete, striking Victim No. 20.

q.    On or about December 27, 2015, in Chelsea,
Massachusetts, JOEL MARTINEZ, A/K/A "ANIMAL"; and MAURICIO
SANCHEZ, A/K/A "TIGRE," and others known to the Grand Jury,
agreed to, and attempted to, murder Victim No. 23, an individual
known to the Grand Jury, by stabbing him with a knife.

r.    On or about December 7, 2008, in Malden,
Massachusetts, GERMAN HERNANDEZ, a/k/a "TERIBLE"; and SANTOS
PORTILLO-ANDRADE, a/k/a "FLACO," agreed to, and attempted to,

murder Victim No. 24, an individual known to the Grand Jury, by hitting Victim No. 24 over the head with an aluminum baseball bat.

30. Further means and methods of the conspiracy included numerous acts of trafficking in illegal controlled substances, including cocaine, cocaine base, heroin, and marijuana, which leaders, members, and associates of the MS-13 criminal enterprise engaged in to generate income for MS-13. Those acts included, among others, the following:

### DRUG TRAFFICKING

a. Starting in at least October 2013, and continuing until at least July 2014, at Chelsea, East Boston, and elsewhere in the District of Massachusetts, JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO," knowingly and intentionally conspired with Manuel Martinez, A/K/A "Gordo"; Manuel Flores, A/K/A "Manny"; Ramiro Guerra, A/K/A "Camello," and others to possess with intent to distribute and to distribute cocaine, a Schedule II controlled substance, and cocaine base, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 846.

b. Starting in at least February 2014, and continuing until at least December 2014, in Saugus, and elsewhere in the District of Massachusetts, and in Salem, and elsewhere in the District of New Hampshire, NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY"; JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO";

CESAR MARTINEZ, A/K/A "CHECHE";

; FNU LNU A/K/A "CABALLO"; ERICK ARGUETA LARIOS, A/K/A "LOBO"; and JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY," A/K/A "DANGER," knowingly and intentionally conspired with each other, and others, to possess with intent to distribute and to distribute cocaine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 846.

This conspiracy involved five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A). Accordingly, Title 21, United States Code, Section 841(b)(1)(A)(ii) is applicable to this conspiracy.

c. Starting in at least March 2015, and continuing until at least in or about October 2015, at Boston, Lynn, Everett, Revere, and elsewhere in the District of Massachusetts, SANTOS PORTILLO-ANDRADE, A/K/A "FLACO"; EDGAR PLEITEZ, A/K/A "CADEJO" CHRISTIAN ALVARADO, A/K/A "CATRACHO," knowingly and intentionally conspired with each other and with FNU LNU, A/K/A "The Columbian"; Carlos Lovato; FNU LNU, A/K/A "Migue"; and Luis LNU; and others, to possess with intent to distribute and to distribute heroin, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 846.

The conspiracy described herein involved 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B). Accordingly, Title 21, United States Code, Section 841(b)(1)(B)(i) is applicable to this conspiracy.

The conspiracy described herein also involved 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B). Accordingly, Title 21, United States Code, Section 841(b)(1)(B)(ii) is applicable to this conspiracy.

d. Starting in at least 2014, and continuing until January 2016, at Somerville and elsewhere in the District of Massachusetts, GERMAN HERNANDEZ, A/K/A "TERIBLE"; NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY"; JOSE RENE ANDRADE, A/K/A "TRISTE," A/K/A "INOCENTE"; and RUTILIO PORTILLO, A/K/A "PANTERA," knowingly and intentionally conspired with each other and with others to possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 846.

31. The means and methods of the conspiracy also included conspiracy to commit, and the commission of, robberies, including armed robberies, in part to generate income for MS-13.

33

These conspiracies to rob and robberies included, among others, the following:

         a.     On or about April 9, 2014, in Chelsea, Massachusetts, HECTOR RAMIRES, A/K/A "CUERVO", robbed Victim No. 8, an individual known to the Grand Jury, with a gun.

    All in violation of Title 18, United States Code, Section 1962(d).

COUNT THREE:    (21 U.S.C. § 846--Conspiracy to Distribute
                Cocaine)

The Grand Jury further charges that:

32    From a time unknown to the Grand Jury, but at least by

in or about February 2014, and continuing thereafter until at

least in or about December 2014, at Saugus, and elsewhere in the

District of Massachusetts, and at Salem, and elsewhere in the

District of New Hampshire,

     4.   NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"
     8.   JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO,"
    11.   CESAR MARTINEZ, A/K/A "CHECHE,"
    12.
    13.   FNU LNU A/K/A "CABALLO,"
    14.   ERICK ARGUETA LARIOS, A/K/A "LOBO," and
    16.   JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY,"
         A/K/A "DANGER,"

the defendants herein, did knowingly and intentionally combine,

conspire, confederate, and agree with each other, and with other

persons known and unknown to the Grand Jury, to possess with

intent to distribute and to distribute cocaine, a Schedule II

controlled substance, in violation of Title 21, United States

Code, Section 841(a)(1).

33.    The Grand Jury further charges that the conspiracy

described herein involved five kilograms or more of a mixture

and substance containing a detectable amount of cocaine, a

Schedule II controlled substance, in violation of Title 21,

United States Code, Section 841(b)(1)(A).  Accordingly, Title

35

21, United States Code, Section 841(b)(1)(A)(ii), is applicable
to this Count.

34.   The Grand Jury further charges that five kilograms or
more of a mixture and substance containing a detectable amount
of cocaine, a Schedule II controlled substance, are attributable
to and were reasonably foreseeable by the following defendants:

> 4.   NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"
> 13.   FNU LNU A/K/A "CABALLO,"
> 14.   ERICK ARGUETA LARIOS, A/K/A "LOBO," and
> 16.   JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY,"
>        A/K/A "DANGER"

Accordingly, Title 21, United States Code, Section
841(b)(1)(A)(ii), is applicable to this Count as to these four
defendants.

35.   The Grand Jury further charges that 500 grams or more
of a mixture and substance containing a detectable amount of
cocaine, a Schedule II controlled substance, are attributable to
and were reasonably foreseeable by the following defendants:

> 8.   JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO,"
> 11.   CESAR MARTINEZ, A/K/A "CHECHE," and
> 12.

Accordingly, Title 21, United States Code, Section
841(b)(1)(B)(ii), is applicable to this Count as to these three
defendants.

All in violation of Title 21, United States Code, Section
846.

COUNT FOUR:        (18 U.S.C. § 924(c)(1)--Possession of a Firearm
                   in Furtherance of a Drug Trafficking Crime)

The Grand Jury further charges that:

    36.  On or about December 8, 2014, at Saugus, in the
District of Massachusetts,

    4.    NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"

the defendant herein, knowingly possessed a firearm, to wit:  a
black .380 handgun, in furtherance of a drug trafficking crime,
to wit:  conspiracy to possess with intent to distribute and to
distribute cocaine, a Schedule II controlled substance, in
violation of 21 U.S.C. § 846, as charged in Count Three of this
Second Superseding Indictment.

    All in violation of Title 18, United States Code, Section
924(c)(1).

COUNT FIVE:      (21 U.S.C. § 846--Conspiracy to Distribute Heroin
                 and Cocaine)

The Grand Jury further charges that:

37. From a time unknown to the Grand Jury, but at least by
in or about March 2015, and continuing thereafter until at least
in or about October 2015, at Boston, Lynn, Everett, Revere, and
elsewhere in the District of Massachusetts,

            5.   SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"
            9.   EDGAR PLEITEZ, A/K/A "CADEJO,"
            10.  CHRISTIAN ALVARADO, A/K/A "CATRACHO,"
            46.  FNU LNU, A/K/A "THE COLUMBIAN,"
            47.  CARLOS LOVATO,
            48.  FNU LNU, A/K/A "MIGUE," and
            49.  LUIS LNU,

the defendants herein, did knowingly and intentionally combine,
conspire, confederate, and agree with each other, and with other
persons known and unknown to the Grand Jury, to possess with
intent to distribute and to distribute heroin, a Schedule I
controlled substance, and cocaine, a Schedule II controlled
substance, in violation of Title 21, United States Code, Section
841(a)(1).

38. The Grand Jury further charges that the conspiracy
described herein involved 100 grams or more of a mixture and
substance containing a detectable amount of heroin, a Schedule I
controlled substance, in violation of Title 21, United States
Code, Section 841(b)(1)(B). Accordingly, Title 21, United States
Code, Section 841(b)(1)(B)(i) is applicable to this Count.

39    The Grand Jury further charges that the conspiracy
described herein involved 500 grams or more of a mixture and
substance containing a detectable amount of cocaine, a Schedule
II controlled substance, in violation of Title 21, United States
Code, Section 841(b)(1)(B). Accordingly, Title 21, United States
Code, Section 841(b)(1)(B)(ii) is applicable to this Count.

40.   The Grand Jury further charges that 100 grams or more
of a mixture and substance containing a detectable amount of
heroin are attributable to and were reasonably foreseeable by
the following defendants:

        5.   SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"
        9.   EDGAR PLEITEZ, A/K/A "CADEJO,"
       10.   CHRISTIAN ALVARADO, A/K/A "CATRACHO,"
       48.   FNU LNU, A/K/A "MIGUE," and
       49.   LUIS LNU,

Accordingly, Title 21, United States Code, Section
841(b)(1)(B)(i), is applicable to this Count as to these five
defendants.

41.   The Grand Jury further charges that 500 grams or more
of a mixture and substance containing a detectable amount of
cocaine are attributable to and were reasonably foreseeable by
the following defendant:

        5.   SANTOS PORTILLO-ANDRADE, A/K/A "FLACO"
Accordingly, Title 21, United States Code, Section
841(b)(1)(B)(ii) is applicable to this Count as to this
defendant.

All in violation of Title 21, United States Code, Section 846.

COUNT SIX:        (18 U.S.C. § 924(c)(1)--Possession of a Firearm
                  in Furtherance of a Drug Trafficking Crime)

The Grand Jury further charges that:

    42.  On or about October 25, 2015, at Boston, Lynn,
Everett, and Revere, in the District of Massachusetts,

            5.    SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"

the defendant herein, knowingly possessed a firearm, to wit:  a
9 millimeter Luger semi-automatic pistol, bearing serial number
PO93088, in furtherance of a drug trafficking crime, to wit:
conspiracy to possess with intent to distribute and to
distribute heroin, a Schedule I controlled substance, in
violation of 21 U.S.C. § 846, as charged in Count Five of this
Second Superseding Indictment.

    All in violation of Title 18, United States Code, Section
924(c)(1).

COUNT SEVEN: (21 U.S.C. § 846--Conspiracy to Distribute
             Cocaine and Cocaine Base)

The Grand Jury further charges that:

43. From a time unknown to the Grand Jury, but at least by
in or about October 2013, and continuing thereafter until at
least in or about July 2014, at Chelsea, East Boston, and
elsewhere in the District of Massachusetts,

         8. JOSE HERNANDES-MIGUEL, A/K/A "MUERTO,"
        41. RAMIRO GUERRA, A/K/A "CAMELLO,"
        42. MANUEL MARTINEZ, A/K/A "GORDO," and
        44. MANUEL FLORES-VALLE, A/K/A "MANNY,"

the defendants herein, did knowingly and intentionally combine,
conspire, confederate, and agree with each other, and with other
persons known and unknown to the Grand Jury, to possess with
intent to distribute and to distribute cocaine, a Schedule II
controlled substance, and cocaine base, a Schedule II controlled
substance, in violation of Title 21, United States Code, Section
841(a)(1).

All in violation of Title 21, United States Code, Section
846.

**COUNT EIGHT:** **(21 U.S.C. § 841(a)(1)--Distribution of Cocaine Base)**

The Grand Jury further charges that:

44. On or about August 7, 2013, at Chelsea, in the District of Massachusetts,

### 43. ALEXANDER ALVARENGA,

the defendant herein, did knowingly and intentionally possess with intent to distribute and distribute cocaine base, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1).

**COUNT NINE:** **(21 U.S.C. § 841(a)(1)--Distribution of Cocaine Base)**

The Grand Jury further charges that:

45   On or about August 21, 2013, at Chelsea, in the District of Massachusetts,

### 43.   ALEXANDER ALVARENGA,

the defendant herein, did knowingly and intentionally possess with intent to distribute and distribute cocaine base, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1).

COUNT TEN:        (21 U.S.C. § 841(a)(1)--Distribution of Cocaine)

The Grand Jury further charges that:

46.   On or about September 3, 2015, at Chelsea, in the District of Massachusetts,

45.   HEINER YOVANI GOMEZ, A/K/A "FIERO,"

the defendant herein, did knowingly and intentionally possess with intent to distribute and distribute cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1).

COUNT ELEVEN:   (21 U.S.C. § 846--Conspiracy to Distribute
                Marijuana)

The Grand Jury further charges that:

47.   From a time unknown to the Grand Jury, but at least by

in or about 2014, and continuing thereafter until January 2016,

at Somerville, and elsewhere in the District of Massachusetts,

> 3.   **GERMAN HERNANDEZ, A/K/A "TERIBLE,"**
> 4.   **NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"**
> 19.  **JOSE RENE ANDRADE, A/K/A "TRISTE," A/K/A**
>      **"INNOCENTE," and**
> 37.  **RUTILIO PORTILLO, A/K/A "PANTERA"**

the defendants herein, did knowingly and intentionally combine,

conspire, confederate, and agree with other persons known and

unknown to the Grand Jury, to possess with intent to distribute

and to distribute marijuana, a Schedule I controlled substance,

in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section

846.

## COUNT TWELVE: (18 U.S.C. § 922(g)(5)(A)--Alien in Possession of a Firearm and Ammunition)

The Grand Jury further charges that:

48. On or about August 5, 2008, at Somerville, in the District of Massachusetts,

### 37. RUTILIO PORTILLO, A/K/A "PANTERA,"

the defendant herein, an alien who was then illegally and unlawfully in the United States, did knowingly possess in and affecting commerce a firearm and ammunition, to wit: a 9 millimeter Beretta semi-automatic pistol bearing serial number 889945 and eight rounds of Winchester brand .380 caliber ammunition.

All in violation of Title 18, United States Code, Section 922(g)(5)(A).

**COUNT THIRTEEN:**       **(18 U.S.C. § 1546(a)—-Possession of a**
                          **Counterfeit Resident Alien Card)**

The Grand Jury further charges that:

49.  On or about December 16, 2015, at Boston and
Burlington, in the District of Massachusetts,

50.  **JOSE NELSIN REYES-VELASQUEZ, A/K/A "DIABLITO,"**
the defendant herein, did knowingly possess a document
prescribed by statute and regulation for entry into, and as
evidence of authorized stay and employment in the United States,
that is, a Permanent Resident Alien Card, knowing it to be
forged, counterfeited, altered, and falsely made.

All in violation of Title 18, United States Code, Section
1546(a).

COUNT FOURTEEN:         (42 U.S.C. § 408(a)(7)(C)--Purchase of
                        a Fraudulent Social Security Card)

The Grand Jury further charges that:

50.    In or about April 2015, at Boston, in the District of
Massachusetts,

50.    JOSE NELSIN REYES-VELASQUEZ, A/K/A "DIABLITO,"
the defendant herein, knowingly bought a card that was, and
purported to be, a card issued by the Commissioner of Social
Security, for the purpose of obtaining something of value from
any person and for any other purpose, to wit: as a means of
identification to secure employment.

All in violation of Title 42, United States Code, Section
408(a)(7)(C).

49

**COUNT FIFTEEN:**     (18 U.S.C. § 1028(a)(2)--Transfer of False
                        Identification Document)

The Grand Jury further charges that:

51.  On or about June 4, 2014, at Chelsea, in the District
of Massachusetts,

51.  **OSCAR RIVERA, A/K/A "JOSE,"**

the defendant herein, did knowingly transfer a false
identification document, to wit, a fraudulent social security
card and fraudulent resident alien card, knowing that such
documents were produced without lawful authority, and such
identification documents were and appeared to be documents
issued by and under the authority of the United States, and the
transfer of such documents was in and affected interstate and
foreign commerce.

All in violation of Title 18, United States Code, Section
1028(a)(2).

## COUNT SIXTEEN: (18 U.S.C. § 1028(a)(2)--Transfer of False Identification Document)

The Grand Jury further charges that:

52.  On or about June 14, 2014, at Chelsea, in the District of Massachusetts,

### 52.  ROBERTO A. LOPEZ,

the defendant herein, did knowingly transfer a false identification document, to wit, a fraudulent social security card and fraudulent resident alien card, knowing that such documents were produced without lawful authority, and such identification documents were and appeared to be documents issued by and under the authority of the United States, and the transfer of such documents was in and affected interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 1028(a)(2).

**COUNT SEVENTEEN:** (8 U.S.C. § 1326--Unlawful Re-entry of Deported Alien)

The Grand Jury further charges that:

53. On or about April 14, 2015, at Boston, in the District of Massachusetts,

**53. FRANKLIN RODRIGUEZ, A/K/A "HOLLYWOOD,"**

the defendant herein, being an alien and having been excluded, removed, and deported from the United States on or about August 21, 2006, was found in the United States without having received the express consent of the Secretary of the Department of Homeland Security to reapply for admission to the United States.

All in violation of Title 8, United States Code, Section 1326(a), and Title 6, United States Code, Sections 202(3)-(4), and 557.

COUNT EIGHTEEN:     (8 U.S.C. § 1326--Unlawful Re-entry of
                    Deported Alien)

The Grand Jury further charges that:

54. On or about July 7, 2015, at Boston, in the District
of Massachusetts,

### 54. OSCAR RAMIREZ-CORNEJO, A/K/A "VAGO,"

the defendant herein, being an alien and having been excluded,
removed, and deported from the United States on or about July
11, 2008, was found in the United States without having received
the express consent of the Secretary of the Department of
Homeland Security to reapply for admission to the United States.

All in violation of Title 8, United States Code, Section
1326(a), and Title 6, United States Code, Sections 202(3)-(4),
and 557.

.

53

COUNT NINETEEN:        (8 U.S.C. § 1326--Unlawful Re-entry of
                       Deported Alien)

The Grand Jury further charges that:

    55.  On or about December 6, 2015, at Winthrop, in the
District of Massachusetts,

        57.  ELENILSON GUSTAVO GONZALEZ-GONZALEZ, A/K/A
             "SINIESTRO,"

the defendant herein, being an alien and having been excluded,
removed, and deported from the United States on or about May 21,
2012, was found in the United States without having received the
express consent of the Secretary of the Department of Homeland
Security to reapply for admission to the United States.

    All in violation of Title 8, United States Code, Section
1326(a), and Title 6, United States Code, Sections 202(3)-(4),
and 557.

## RICO FORFEITURE ALLEGATIONS
### (18 U.S.C. § 1963)

The Grand Jury further charges that:

56.   The allegations of Count Two of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963.

57.   Upon conviction of the offense in violation of Title 18, United States Code, Section 1962, set forth in Count Two of this Second Superseding Indictment,

```
 1.   OSCAR NOE RECINOS-GARCIA, A/K/A "PSYCHO,"
 2.   JULIO ESAU AVALOS-ALVARADO, A/K/A "VIOLENTO,"
 3.   GERMAN HERNANDEZ-ESCOBAR, A/K/A "TERIBLE,"
 4.   NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"
 5.   SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"
 6.   HERZZON SANDOVAL, A/K/A "CASPER,"
 7.   EDWIN GUZMAN, A/K/A "PLAYA,"
 8.   JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO,"
 9.   EDGAR PLEITEZ, A/K/A "CADEJO,"
10.   CHRISTIAN ALVARADO, A/K/A "CATRACHO,"
11.   CESAR MARTINEZ, A/K/A "CHECHE,"
12.
13.   FNU LNU, A/K/A "CABALLO,"
14.   ERICK ARGUETA LARIOS, A/K/A "LOBO,"
15.   LUIS SOLIS-VASQUEZ, A/K/A "BRUJO,"
16.   JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY,"
      A/K/A "DANGER,"
17.   CARLOS MELARA, A/K/A "CHUCHITO,"
      A/K/A "CRIMINAL,"
18    JOEL MARTINEZ, A/K/A "ANIMAL,"
19.   JOSE RENE ANDRADE, A/K/A "TRISTE,"
      A/K/A "INNOCENTE,"
20.   HECTOR ENAMORADO, A/K/A "VIDA LOCA,"
21.   HENRY SANTOS-GOMEZ, A/K/A "RENEGADO,"
      A/K/A "PINO,"
22.   RAFAEL LEONER-AGUIRRE, A/K/A "TREMENDO,"
23.   HECTOR RAMIRES, A/K/A "CUERVO,"
24.   DANIEL MENJIVAR, A/K/A "ROCA," A/K/A "SITIKO,"
```

25.  ANGEL PINEDA, A/K/A "BRAVO," A/K/A "JOSE LOPEZ,"
26.  JOSE VASQUEZ, A/K/A "LITTLE CRAZY,"
27.  DAVID LOPEZ, A/K/A "CILINDRO", A/K/A "VILLANO,"
28.  BRYAN GALICIA-BARILLAS, A/K/A "CHUCKY,"
29.  DOMINGO TIZOL, A/K/A "CHAPIN,"
30.  FNU LNU, A/K/A "VIOLENTO,"
31.  OSCAR DURAN, A/K/A "DEMENTE,"
32.  EDWIN GONZALEZ, A/K/A "SANGRIENTO,"
33.  HENRY JOSUE PARADA MARTINEZ,
     A/K/A "STREET DANGER,"
34.  JOSUE MORALES, A/K/A "GALLITO,"
35.  KEVIN AYALA, A/K/A "BLANCITO,"
36.  MARIO AGUILAR RAMOS,
37.  RUTILIO PORTILLO, A/K/A "PANTERA,"
38.  EDWIN DIAZ, A/K/A "DEMENTE,"
39.  MARVIN MELGAR, A/K/A "NINJA,"
40.  JAIRO PEREZ, A/K/A "SECO,"
55.  MAURICIO SANCHEZ, A/K/A "TIGRE," and
56.  JOSE ADAN MARTINEZ CASTRO, A/K/A "CHUCKY"

the defendants herein, shall forfeit to the United States,

jointly and severally, pursuant to Title 18, United States Code,

Section 1963:

(a) all interests the defendants have acquired or

maintained in violation of Title 18, United States Code, Section

1962, wherever located, and in whatever names held;

(b) all interests in, securities of, claims against,

or properties or contractual rights of any kind affording a

source of influence over, any enterprise which the defendants

have established, operated, controlled, conducted, or

participated in the conduct of, in violation of Title 18, United

States Code, Section 1962; and

(c) all property constituting, and derived from, any

proceeds which the defendants obtained, directly and indirectly,

from racketeering activity and unlawful debt collection in violation of Title 18, United States Code, Section 1962.

58. If any of the property described in paragraph 57 hereof as being forfeitable pursuant to Title 18, United States Code, Section 1963, as a result of any act and omission of the defendants --

> (a) cannot be located upon the exercise of due diligence;
>
> (b) has been transferred to, sold to, or deposited with a third party;
>
> (c) has been placed beyond the jurisdiction of this Court;
>
> (d) has been substantially diminished in value; or
>
> (e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 57 above.

All pursuant to Title 18, United States Code, Section 1963.

## DRUG FORFEITURE ALLEGATIONS
## (21 U.S.C. § 853)

The Grand Jury further charges that:

59. The allegations of Counts Three, Five, and Seven through Eleven of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

60. Upon conviction of one or more of the offenses alleged in Counts Three, Five, and Seven through Eleven of this Second Superseding Indictment,

```
3.   GERMAN HERNANDEZ-ESCOBAR, A/K/A "TERIBLE"
4.   NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"
5.   SANTOS PORTILLO-ANDRADE, A/K/A "FLACO,"
8.   JOSE HERNANDEZ-MIGUEL, A/K/A "MUERTO,"
9.   EDGAR PLEITEZ, A/K/A "CADEJO,"
10.  CHRISTIAN ALVARADO, A/K/A "CATRACHO,"
11.  CESAR MARTINEZ, A/K/A "CHECHE,"
12.
13.  FNU LNU A/K/A "CABALLO,"
14.  ERICK ARGUETA LARIOS, A/K/A "LOBO," and
16.  JOSE MIGUEL-HERNANDEZ, A/K/A "SMILEY,"
     A/K/A "DANGER,"
19.  JOSE RENE ANDRADE, A/K/A "TRISTE," A/K/A
     "INNOCENTE,"
37.  RUTILIO PORTILLO, A/K/A "PANTERA,"
41.  RAMIRO GUERRA, A/K/A "CAMELLO,"
42.  MANUEL MARTINEZ, A/K/A "GORDO,"
43.  ALEXANDER ALVARENGA,
44.  MANUEL FLORES-VALLE, A/K/A "MANNY,"
45.  HEINER YOVANI GOMEZ, A/K/A "FIERO,"
46.  FNU LNU, A/K/A "THE COLUMBIAN,"
47.  CARLOS LOVATO,
48.  FNU LNU, A/K/A "MIGUE," and
49.  LUIS LNU,
```

the defendants herein, shall forfeit to the United States,

jointly and severally as to Counts Three, Five, Seven, and

Eleven, pursuant to 21 U.S.C. § 853, any and all property

constituting, or derived from, any proceeds the defendant

obtained, directly or indirectly, as a result of such offenses;

and/or any property used or intended to be used, in any manner

or part, to commit, or to facilitate the commission of, any such

violations.

61. If any of the property described in paragraph 60,

above, as a result of any act or omission of the defendants --

> (a) cannot be located upon the exercise of due
> diligence;
>
> (b) has been transferred or sold to, or deposited
> with, a third party;
>
> (c) has been placed beyond the jurisdiction of the
> Court;
>
> (d) has been substantially diminished in value; or
>
> (e) has been commingled with other property which
> cannot be divided without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of the

defendant up to the value of the property described in paragraph

60.

All pursuant to Title 21, United States Code, Section 853.

## FIREARMS FORFEITURE ALLEGATIONS
### (18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c))

The Grand Jury further charges that:

62. The allegations of Counts One, Four, Six, and Twelve of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c).

63. Upon conviction of one or more offenses alleged in Counts One, Four, Six, and Twelve of this Second Superseding Indictment,

    1.    OSCAR NOE RECINES-GARCIA, A/K/A "PSYCHO,"
    2.    JULIO ESAU AVALOS-ALVARADO, A/K/A "VIOLENTO,"
    4.    NOE SALVADOR PEREZ-VASQUEZ, A/K/A "CRAZY,"
    5.    SANTOS PORTILLO-ANDRADE, A/K/A "FLACO," and
    37.    RUTILIO PORTILLO, A/K/A "PANTERA,"

the defendants herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearm or ammunition involved in, or used in, any knowing commission of the offense, including but not limited to the following:

    (a)    one .22 caliber Sterling model semi-automatic pistol bearing serial number A14546;
    (b)    twelve rounds of .22 caliber ammunition;
    (c)    one .380 caliber Cobra Enterprises Model CA-380 semi-automatic pistol bearing serial number CP033661;
    (d)    one 9 millimeter Luger model semi-automatic pistol, bearing serial number P093088; and

(e)  one 9 millimeter Beretta model semi-automatic pistol,
     bearing serial number 889945, and eight rounds of
     Winchester brand ammunition.

64.  If any of the property described in paragraph 63,

above, as a result of any act or omission of any of the

defendants -

(a)  cannot be located upon the exercise of due diligence;

(a)  has been transferred or sold to, or deposited with, a
     third party;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot
     be divided without difficulty;

it is the intention of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated in Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of the defendants up to the value of the property

described in paragraph 63.

All pursuant to Title 18, United States Code, Section

924(d) and Title 28, United States Code, Section 2461(c).

## IDENTIFICATION FRAUD FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(2)(B) & (a)(6)(ii))

The Grand Jury further charges that:

65. The allegations of Counts Thirteen, Fifteen, and Sixteen of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(B) & (a)(6)(A)(ii).

66 Upon conviction of one or more offense alleged in Counts Thirteen, Fifteen, and Sixteen of this Second Superseding Indictment,

50. **JOSE NELSIN REYES-VELAZQUEZ, A/K/A "DIABLITO,"**
51. **OSCAR RIVERA, A/K/A "JOSE," and**
52. **ROBERTO A. LOPEZ,**

the defendants herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B) &(a)(6)(ii):

(i) any property, real or personal, constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of such offense; and

(ii) any property, real or personal, used to facilitate, or is intended to be used or facilitate, the commission of the offenses of which the defendants are convicted.

67. If any of the property described in paragraph 66, above, as a result of any act or omission of the defendants --

(a) cannot be located upon the exercise of due diligence;

62

      (b)   has been transferred or sold to, or deposited with, a third party;

      (c)   has been placed beyond the jurisdiction of the Court;

      (d)   has been substantially diminished in value; or

      (e)   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 66.

All pursuant to Title 18, United States Code, Section 982(a)(2)(B) & (a)(6)(ii).

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
PETER K. LEVITT
CHRISTOPHER POHL
Assistant U.S. Attorneys

DISTRICT OF MASSACHUSETTS          January 26, 2016

    Returned into the District Court by the Grand Jurors and filed.

_____   3:03pm
Deputy Clerk